## 25258.   JACKSON v. THE STATE.

SUBMITTED JULY 15, 1969—DECIDED SEPTEMBER 29, 1969.

*B. Hugh Ansley,* for appellant.

*Lewis R. Slaton, District Attorney, Tony H. Hight, Arthur K. Bolton, Attorney General, Harold N. Hill, Jr., Executive Assistant Attorney General, Marion O. Gordon, Assistant Attorney General, Larry H. Evans,* for appellee.

FRANKUM, Justice. Norman Jackson was jointly indicted with Elbert Davis on four counts of rape, counts one, two and three charging him with being a principal in the second degree in aiding and abetting three other named individuals, including the said Elbert Davis in the rape of a young Korean woman on the night of September 3, 1967, and the fourth count charging him with the offense of rape committed on the person of the aforesaid female by and with the aid of the other three named individuals including the said Elbert Davis. The defendant was separately tried and the jury returned a verdict finding him guilty without recommendation of mercy on all four counts. This case arose out of the same events as set forth in *Jackson v. State*, 225 Ga. 39 (165 SE2d 711) in which case the appeal of the brother of the defendant here was disposed of, and to which case reference may be had for a more complete statement of the facts, a repetition of which would serve no useful purpose. Only such additional facts as specifically relate to the questions raised in this case will be dealt with in this opinion.

Under the evidence adduced for the State, the jury was authorized to find that the defendant here, together with his co-indictee and two other Negroes, approached the automobile of the victim while the same was parked in Grant Park in the City of Atlanta, occupied by the victim and her male companion; that these four forcibly removed the victim and her male companion from the automobile, and while still in Grant Park all four of the individuals raped the victim while holding her companion at gunpoint nearby; that thereafter the four transported the victim and her companion in the victim's automobile to a vacant house on Pulliam Street where the additional rapes referred to in the aforesaid case were accomplished; that the defendant here on trial was among those present, aiding and abetting the multiple rapes there described; that he again perpetrated the crime of rape on the person of the victim at least once. The defendant here offered no evidence in defense of the charges against him, but merely made an unsworn statement to the jury in which he denied his presence in Grant Park, and in which he contended that he merely came to the house on Pulliam Street and at the invitation of another Negro male, entered

therein and had intercourse with the victim without, insofar as he was concerned, exerting any force upon her, and that he thought that the act had been accomplished with the consent of the victim. The defendant was later identified by the victim and her companion from photographs shown to them by the police and the defendant was arrested at his place of employment. Upon his arrest certain articles of personalty belonging to the victim, including the keys to her automobile, were found in the possession of the defendant, and in addition thereto the full palm print of one of the defendant's hands was found on the automobile of the victim after the automobile was recovered from the street where it had been abandoned.

In his appeal to this court the defendant enumerates 28 grounds of alleged error. In his brief and argument before this court he has, however, abandoned grounds 11, 16, 17 and 26 of his grounds of enumerated error. A number of his grounds of enumerated error may be treated together, and we shall proceed to dispose of the grounds of alleged error not abandoned in the order in which they have been presented.

■ The first six grounds of alleged error all relate to the defendant's objection to the admission of evidence of out-of-court and in-court identification of the defendant by the victim and her male companion, on the ground that the pre-trial identification of the defendant by the eye-witnesses was accomplished at a time when the defendant did not have counsel and in such manner as to amount to an unconstitutional violation of the defendant's privilege against self-incrimination, and that such prior identification of the defendant so tainted the ability of the eye-witnesses to make an unbiased identification of the defendant as to render their in-court identification of him inadmissible. In both of his written statements which were properly admitted in evidence as hereinafter considered, the defendant admitted his presence at the two locations where the jury was authorized to find that the alleged rapes were committed, and in his unsworn statement to the jury the defendant admitted his presence at the vacant house on Pulliam Street on the occasion in question and that he had sexual intercourse with the woman alleged to have been raped. One

witness (other than the victim and her male companion, whose testimony identifying the defendant is the subject of the first six grounds of enumerated error) testified without objection that the defendant was present at the vacant house on Pulliam Street on the occasion in question. In view of the admissions contained in the defendant's statements and the evidence above referred to, the only issue in the case was whether the act of sexual intercourse admitted by him was with the consent of the prosecuting witness or was accomplished forcibly and against her will and therefore rape. There was, therefore, no issue in the case as to the identity of the defendant, and these enumerations of error are without merit. *Whippler v. State,* 218 Ga. 198, 204 (126 SE2d 744); *Smithey v. State,* 219 Ga. 247 (1) (132 SE2d 666); *Salisbury v. State,* 222 Ga. 549 (2) (150 SE2d 819).

■ Enumerations of error numbers 7, 8 and 9 complain of the refusal of the court to allow counsel for the defendant to cross-examine three different witnesses with respect to particular matters. Counsel for the appellant, however, fails to point out in his brief and argument before this court where the court refused to permit him to ask and elicit answers from the witnesses as to any pertinent or relevant matter. While counsel for appellant has quoted in part 1 of his brief excerpts from the transcript which are apparently relevant to these three enumerations of error, these quoted excerpts, when examined with reference to the entire testimony of the witnesses in question show that the questions which the court refused to permit the witnesses to answer were not calculated to elicit relevant testimony. These grounds of enumerated error show no cause for reversal. *Pulliam v. State,* 196 Ga. 782, 787 (28 SE2d 139); *Smith v. State,* 202 Ga. 851, 867 (45 SE2d 267); *Rooker v. State,* 211 Ga. 361 (4) (86 SE2d 307).

■ In the tenth ground of enumerated error the defendant contends that the trial judge erred in admitting two written statements made by the defendant on the ground that the same were not properly authenticated. The persons to whom these statements were made testified with respect to the statements, as to their having been dictated to them by the defendant,

as to their being typed up in the presence of the accused and given to him to be read by him; that when they were handed to him he stated that he could read, and that he read both the statements, and as to one of them returned it to the typist with a correction to be made. These witnesses testified that they affixed their signatures to the statements as subscribing witnesses and that the defendant voluntarily signed the statements in their presence. This evidence sufficiently authenticated the statements so as to authorize their introduction in evidence.

■ Four grounds of enumerated error, numbered 12, 13, 14 and 15, complain generally of alleged harassment of counsel for the defendant by the trial judge in his refusal to permit counsel for the defendant to bring a tape recorder into the courtroom; in the action of the judge in enforcing his order refusing to permit cross-examination of one of the witnesses as complained of in ground number 7; in the further action of the judge in refusing the defendant's proffer of certain evidence to perfect the record; in ordering counsel for the defendant to sit down and say no more, and in ordering the sheriff to set him down; and finally in adjudging defense counsel in contempt of court and in ordering the sheriff to arrest him during the progress of the trial, contending that the judge thereby denied defendant right to effective counsel and to a fair and impartial trial. None of these grounds shows cause for reversal. It is fundamental that every court possesses the inherent power to preserve and enforce order and compel obedience to its judgments and orders, to control the conduct of its officers and all other persons connected with the judicial proceedings before it and to inflict summary punishment for contempt upon any person failing and refusing to obey any lawful order of such court. *Code* §§ 24-104, 24-105. *Bradley v. State,* 111 Ga. 168, 170 (36 SE 630, 50 LRA 691, 78 ASR 157). This court will not undertake to control the wide discretion vested in the trial court in the exercise of this fundamental power unless it is made to appear that wrong or oppression has resulted from an abuse of such discretion reposed in the court. *Carr v. State,* 76 Ga. 592, 596; *Perryman v. State,* 114 Ga. 545, 546 (40 SE 746).

An examination of the transcript referred to by counsel for the appellant in his argument of these grounds of enumerated error shows that each of the matters complained of by these grounds grew out of the action of the court taken in enforcing its lawful orders. With respect to ground 12, the transcript shows that while the jury was out of the courtroom the court refused to permit counsel for the defendant to bring into the courtroom a tape recorder unless he should first obtain the permission of the court. Error is not enumerated with respect to the refusal of the court to permit the tape recorder to be brought into the courtroom but merely with respect to the alleged harassment and intimidation of counsel for the defendant "regarding the bringing into the courtroom proposed evidence to be used for defense." What the proposed evidence was does not appear from this ground or from the portions of the transcript pointed out in the brief. The other three grounds all relate to the action of the court in enforcing its order with respect to cross-examination of one Dr. Krall which is a matter dealt with in division two of this opinion. It appears from the transcript in this regard that the court refused to permit examination of this witness by counsel for the defendant with respect to an irrelevant matter; that counsel refused to abide by the ruling of the court, attempted to argue the point after the court had already ruled, in violation of the provisions of Rule 23 of the Rules of the Superior Court which reads: "No attorney shall ever attempt to argue or explain a case, after having been fully heard, and the opinion of the court has been pronounced, on pain of being considered in contempt." *Code Ann.* § 24-3323. See *Crudup v. State,* 218 Ga. 819, 820 (130 SE2d 733). After having moved for a mistrial because of intimidation by the court and having had that motion overruled, counsel for the defendant was ordered by the court to sit down and say no more. Counsel continued to argue and the court ordered the sheriff to set him down and he again renewed his motion for a mistrial, whereupon the court, out of the presence of the jury, adjudged him in contempt and ordered the sheriff to forbid him to leave the courtroom upon the court recessing. This action having taken place out of the presence of the jury, it is difficult to see

how it could have harmfully affected the outcome of the case insofar as the jury verdict was concerned. We have thoroughly examined the record and the transcript in this case and we find nothing to indicate that the ability of defendant's counsel to represent his client was in any way obstructed or hindered by the actions of the court complained of. In view of the authority which we have cited, we find no error in any of the matters complained of in these grounds of enumerated error. See in addition to the authorities already cited the case of *Pease v. State,* 91 Ga. 18 (2) (16 SE 113).

■ In ground 18 of the enumerated errors, the appellant contends that the trial court erred in charging the jury the law pertaining to confessions, this contention being based, as apparent from the argument in the brief of counsel for appellant, on his contention that the extra judicial written statements signed by the accused and introduced in evidence on the trial fell short of satisfying the definition of a confession. "A confession is a voluntary statement made by a person charged with the commission of a crime, wherein he acknowledges himself to be guilty of the offense charged." *Owens v. State,* 120 Ga. 296 (2) (48 SE 21). Such a statement will not suffice as a confession where only limited facts are admitted from which the jury would not be authorized to infer guilt. *Covington v. State,* 79 Ga. 687 (7 SE 153); *Fletcher v. State,* 90 Ga. 468 (17 SE 100); *Harris v. State,* 207 Ga. 287, 289 (61 SE2d 135). Accordingly, where in a case such as this the accused makes a statement which admits the intercourse but falls short of admitting that the intercourse was accomplished by means of force and against the will of the victim or prosecutrix, such statement is insufficient to amount to a confession of rape, since force is an essential element of the crime of rape. However, where the statement in question clearly makes out a case of conspiracy between the defendant on trial and other individuals charged with the commission of the same crime at the same time and place, and where, from all reasonable inferences and deductions which may be drawn from the statement, it is apparent that all the participants in the crime were exercising and using force or threats of force upon the victim, the defendant, being a participant in the

conspiracy, is equally chargeable under the facts related in the statement with the force exerted upon the victim by means of threats of violence and bodily harm visited upon her by his co-conspirators even though he himself may not have admitted in his statement to have personally exerted any such force and violence upon the victim. Justice Grice, writing for this court in the recent case of *Jackson v. State*, 225 Ga. 39, 44, supra, dealt extensively and comprehensively with the law of conspiracy as it relates to the facts here. As already pointed out, the evidence in that case and the evidence in this case are not substantially different. With respect to the statements in question, the jury would clearly have been authorized to infer from the statements alone that the defendant and the other three who approached the automobile of the victim while it was parked in Grant Park, did so pursuant to a conspiracy to perpetrate the crime of rape upon the victim and that pursuant to that conspiracy, they used force in the form of exhibiting a gun and threatening to shoot the victim and her companion, pulled them out of the car and compelled them to go some distance from the automobile where the first series of rapes was perpetrated in Grant Park; that thereafter the conspirators put the victim and her companion back in the car causing them to lie on the floorboard in the rear thereof and brought them to the house on Pulliam Street where the conspirators again pulled the woman's clothes off of her, made the man lie face down on the floor, made him pull his pants down and all proceeded to have intercourse with her again. While the statements do not expressly admit the use of force, they so clearly imply it, by the use of such words as "pulled," "had," "put," "got," "brought" and "made," as to almost demand a finding, based on the statement alone, that the use or threat of force was at all times therein related present. As we said in *Mathis v. State*, 224 Ga. 816 (165 SE2d 194): "Consent to sexual intercourse obtained through a present and immediate fear of bodily injury to the female involved is the equivalent of no consent at all, and an act of intercourse consummated under such circumstances cannot be said to have been committed with the consent of the female." It follows that the charge on confession was authorized

by the writings in question and the trial court did not err in so charging.

■ There is no merit in the contention made in enumeration of error number 19 that the court's charge on the contention of the defendant was not authorized. The defendant in his unsworn statement to the jury clearly and unequivocally admitted having intercourse with the woman as she lay on a mattress in the old house located on Pulliam Street, stating in effect, that he thought he was having such intercourse with her consent. The court's instruction to the jury on this point was in accord with that contention and such instruction was not error.

■ Five grounds of enumerated error complain of the refusal of the court to instruct the jury in accordance with five separate requests to charge, each embodying in various ways the principle that the crime of rape is not proved if the evidence shows that the female at any time consented to the act of sexual intercourse. In support of his contention that these requested charges should have been given to the jury, counsel for the defendant points out that the language of each of these requests was taken from the language used in opinions of this court and the Court of Appeals in decided cases in the past. That this is so does not render such language necessarily appropriate for use in charging the jury. *Chedel v. Mooney,* 158 Ga. 297 (11) (123 SE 300) ; *Porter v. State,* 180 Ga. 147 (2) (178 SE 151). However, examination of the charge as given shows that the court sufficiently instructed the jury that if the female at any time consented to the acts of sexual intercourse the jury would not be authorized to convict the defendant. The court thus substantially covered the principles embodied in the requested charges and it was not error to refuse to give the requested instructions in the exact language requested. *Hardwick v. Price,* 114 Ga. App. 817, 821 (152 SE2d 905).

■ The twenty-fifth ground of enumerated error excepts to the refusal of the trial court to give in charge to the jury the following requested instruction: "Reasonable doubt means the doubt of a reasonable man and juror who is honestly in search after the truth of the case, and which doubt grows out of evidence, want of evidence or circumstances in the case." In *Lewis v. State,* 11 Ga. App. 102 (1) (74 SE 708), the Court of Appeals

■

approved of a charge actually given embodying this language, and that case has been cited with approval by this court at least once. See *Allen v. State,* 194 Ga. 430, 435 (22 SE2d 65). Properly analyzed, the language of the request embodies two distinct propositions, to wit: a definition of the term "reasonable doubt" and a suggestion as to whence such a doubt might arise.

With respect to the first of these propositions we may say at the outset that there are a few cases wherein this court and the Court of Appeals have held that, in the absence of a timely written request to define the phrase "reasonable doubt," it is not error to fail to do so, thus implying, at least, that had there been such a written request made and refused in those cases a reversal might have been granted on account of such refusal. Typical of this line of cases are the following: *Jackson v. State,* 132 Ga. 570, 573 (64 SE 656); *Elder v. State,* 143 Ga. 383 (1) (85 SE 197); *Thurmond v. State,* 198 Ga. 410, 416 (31 SE2d 804); *Hammond v. State,* 212 Ga. 186 (8) (91 SE2d 615); *Tolbert v. State,* 16 Ga. App. 311 (5) (85 SE 267). In *Madden v. State,* 67 Ga. 151, the Supreme Court held that the refusal of a request to charge "on the subject of reasonable doubts" and an entire failure of the court to charge on the subject constituted reversible error requiring the grant of a new trial, but the decision there seems to have been bottomed mainly on the fact that the court, in instructing the jury as to the quantum of evidence necessary to convict gave them the law as to the quantum of proof required in civil cases rather than in criminal cases. In the opinion the court did state, however, in effect, that in all criminal cases a general charge "on reasonable doubts" should always be given whether requested or not, but nothing in the ruling there or in one later case to the same effect which we have found need be interpreted as a ruling that a definition of the phrase "reasonable doubt" must be incorporated in a charge "on reasonable doubts." See *Hill v. State,* 14 Ga. App. 410, 412 (81 SE 248).

On the other hand, the cases are legion wherein both this court and the Court of Appeals have held that the term "reasonable doubt" is self-explanatory and needs no definition or explanation. Perhaps the leading case so holding is *Battle v. State,*

103 Ga. 53, 57 (29 SE 491) wherein the exception was that the court erred in failing to charge the jury without request the definition of "reasonable doubt." There the court had charged the jury substantially as the trial court in this case did that on arraignment the defendant pleads not guilty, and that that plea together with the indictment forms the issue which the jury is to try; that the defendant enters into the trial with a presumption of innocence in his favor which presumption remains with him throughout the trial until the State by satisfactory evidence overcomes the presumption and establishes his guilt upon each material allegation in the indictment beyond a reasonable doubt. In response to the exception taken this court said: "It hardly seems to be necessary to add to the words 'reasonable doubt' any other words explanatory of their meaning. Mr. Bishop, in the first volume of his New Criminal Procedure, says: 'There are no words plainer than "reasonable doubt," and none so exact to the idea meant. Hence some judges, it would seem, wisely decline attempting to interpret them to the jury.' See also 62 Me. 129; 9 Bush, 593; 7 Baxter, 35; 20 Texas Appeals, 315. In the words of another author, on the subject of giving a specific meaning to the word 'reasonable' when applied to reasonable doubts, 'it is trying to count what is not number, and to measure what is not space.' *Bone v. State*, 102 Ga. 392. In the case of Miles v. United States, 103 U. S. 312, Justice Woods, delivering the opinion of the court, says on this subject: 'Attempts to explain the term "reasonable doubt" do not usually result in making it any clearer to the minds of the jury.' He cites a number of cases in connection with this view. It would seem, therefore, to be a conclusion that the phrase 'reasonable doubt' explains itself. Certainly the meaning is obvious, and will be readily appreciated by the average juror without further explanation. In this case the expression when used by the judge could not have been misunderstood; and we find no error in his failure to enter into any detailed explanation of what was meant by the phrase 'reasonable doubt'." See also holding to the same effect: *Nelms v. State*, 123 Ga. 575, 578 (51 SE 588); *Elder v. State*, 143 Ga. 383 (1), supra; *Paulk v. State*, 148 Ga. 304 (2) (96 SE 417); *Bell v. State*, 148 Ga. 352 (1) (96 SE 861); *Snell*

*v. State*, 179 Ga. 52 (2) (175 SE 14); *Wright v. State*, 184 Ga. 62, 66 (190 SE 663); *Holmes v. State*, 194 Ga. 849, 851 (22 SE2d 808); *Sims v. State*, 203 Ga. 668, 670 (47 SE2d 862); *Barker v. State*, 1 Ga. App. 286, 288 (57 SE 989); *Buchanan v. State*, 11 Ga. App. 756 (2) (76 SE 73); *Wimberly v. State*, 12 Ga. App. 540, 544 (77 SE 879); *Tolbert v. State*, 16 Ga. App. 311 (5) (85 SE 267); *Floyd v. State*, 58 Ga. App. 867 (1, 2) (200 SE 207).

We think that the reasoning of the latter cases and many others to the same effect which could be cited is the better reasoning and we conclude that whether requested to give the jury a definition of reasonable doubt or not that the failure or refusal of the trial court in this respect is not cause for a reversal unless it is manifest that such failure was harmful to the defendant. It is difficult to see how such failure could have harmed the defendant in this case.

With respect to the second proposition embodied in the request, we think the charge as given substantially embodied the idea sought to be expressed therein. In instructing the jury with respect to the presumption of innocence in favor of the defendant the court stated that "that presumption goes with him throughout the trial and until the State removes it *by evidence sufficient to convince your minds beyond a reasonable doubt of Norman Jackson's guilt.*" (Emphasis supplied.) Clearly the jury could not interpret this language as saying other than that want of evidence or the absence of evidence to convince the minds of the jurors of the guilt of the accused would be sufficient to engender in the minds of the jurors a reasonable doubt as to his guilt. This ground shows no cause for reversal.

■ Enumeration number 27 complains of the refusal of the court to give a charge requested in writing relating to the duty of the jury to give the defendant the benefit of every reasonable doubt on each and every phase of the case. This request attempts to inject into the case the issue of grades of offenses and under the circumstances of this case could have reference only to the question of whether the defendant was guilty of the lesser offense of assault with intent to commit rape. Such language was not adjusted to the facts in the case, since the evidence de-

manded a finding of consummation of the act of sexual intercourse itself, even under the defendant's unsworn statement. *Johnson v. State*, 73 Ga. 107 (2); *Berry v. State*, 87 Ga. 579 (3) (13 SE 690); *Lewis v. State*, 156 Ga. 862 (1) (120 SE 124); *Bagwell & Stewart v. Bennett*, 214 Ga. 780 (3) (107 SE2d 824); *Alabama Power Co. v. Chandler*, 217 Ga. 550, 552 (123 SE2d 767).

The final enumeration of error complains that the court erred in refusing to recharge the jury the definition of rape as as requested by the jury. The transcript does not sustain this contention. Rather, it shows that the jury returned to the courtroom, whereupon, a juror asked the court for clarification of a point in the charge. Upon inquiry by the court as to what point was troubling them, the juror stated that counsel for the defendant had, in his summation to the jury given one definition of rape, the prosecuting attorney gave another, while the court in its charge had given still a third definition of rape. The court then instructed the jury that it should take the law as given them by the court and not what the attorneys said. This sufficiently responded to the request of the jurors, and there was no occasion for the court to instruct the jury further in this regard. This ground shows no cause for reversal.

While there is no specific or expressed enumeration of error that the evidence did not authorize the verdict, in view of the fact that the extreme penalty of death was imposed upon the defendant, we have carefully reviewed the evidence and find that it was ample to support the verdict of the jury.

*Judgment affirmed. All the Justices concur.*